UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-666-JHM-CHL

**RONNIE YOUNG,**                                                                                    **Plaintiff,**

v.

**RICHIE CHAPMAN, et al.,**                                                                 **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion (DN 49) of Plaintiff Ronnie Young ("Young") for an order compelling Defendant Richie Chapman ("Chapman") to produce (1) a February 15, 2013 recorded statement; and (2) a February 21, 2013 report prepared by Specialty Claims and Investigation, LLC ("Specialty Claims"). Chapman has filed a response (DN 50) and Young has filed a reply (DN 57). This matter is now ripe for review. For the following reasons, Young's motion to compel (DN 49) is GRANTED.

## BACKGROUND

**1. Motion to Compel**

This case stems from a February 14, 2013 motor vehicle accident. Chapman was driving a vehicle owned by his employer, Defendant Bobby Wilburn, d/b/a Wilburn's Construction Team ("Wilburn"). Young contends that Chapman was at fault. Chapman contends that Young caused the accident by making a left turn at a red light and pulling out in front of Chapman, who had a green light. Following the initial collision, Young's vehicle and Chapman's vehicle each collided with one other vehicle, for a total of four vehicles involved in the accident.

On the day after the accident, February 15, 2013, Chapman gave a recorded statement to an adjuster from Wilburn's insurance company, Amerisure Insurance ("Amerisure"). On

February 21, 2013, Specialty Claims prepared a report for Amerisure. According to Young, a dispute arose between Young's liability insurer, Safeco Insurance ("Safeco"), and Amerisure regarding which driver was at fault. Amerisure and Safeco subsequently entered into arbitration. In conjunction with the arbitration proceedings, Amerisure and Safeco exchanged documents and submitted evidence to the arbitrator. Amerisure provided to the arbitrator copies of the recorded statement and the investigative report, as well as other documents containing references to and descriptions of Chapman's recorded statement and the Specialty Claims report.

In July 2014, Young filed suit in Jefferson Circuit Court. Chapman later removed the case to this Court on the basis of diversity jurisdiction. In his discovery requests, Young asked Chapman to produce "any and all documents, tangible items, or other materials that refer to or is [sic] related to the arbitration documents identified in [Chapman's] Rule 26(a)(1) disclosures." (DN 49 at 3.) In response, Chapman objected to producing some responsive documents on the basis that they are protected under the work-product doctrine, include privileged information, and/or include information obtained in anticipation of litigation. (*Id.*) Counsel for Young and Chapman exchanged written communications on the issue, with Chapman's counsel remaining firm as to Chapman's position that the documents are protected by attorney-client privilege and/or the work-product doctrine. Young then filed the motion to compel (DN 49).

Young argues that Chapman's recorded statement is not protected by attorney-client privilege because Chapman has not shown that he is bound by an insurance policy that required him to cooperate with a liability insurance carrier, in this case Amerisure. Young further argues that the recorded statement is not within the scope of the work-product doctrine because the surrounding circumstances show that it was not prepared in anticipation of litigation. With

2

respect to the report prepared by the Specialty Claims investigator, Young argues that there is no reason to believe that it was created in anticipation of litigation.

Additionally, Young contends that even if the documents were covered by the attorney-client privilege or work-product doctrine, Chapman waived any attorney-client or work-product protection by virtue of Amerisure's production of the documents to the arbitrator and Chapman's disclosure of their existence in the course of discovery in this action. (*Id.* at 4.)

**2. Chapman's Response**

In his response, Chapman maintains that the recorded statement is protected by both attorney-client privilege and the work-product doctrine and that the report is protected by the work-product doctrine. (*Id.* at 2.) Chapman argues that the recorded statement and the Specialty Claims report were prepared in anticipation of litigation.

Chapman avers that Amerisure was notified of the accident approximately four hours after it occurred and notes that the accident received heavy local media coverage. (*See* DN 50-5, affidavit of Amerisure adjuster Trevor Byram.) Chapman further states that he is "being defended under a policy of insurance issued by Amerisure;" that Amerisure has a "duty to defend any 'insured' against a 'suit;'" and that pursuant to the applicable insurance policy, Chapman is obligated to cooperate with Amerisure in the investigation or settlement of the "suit." (*Id.* at 3 n.3 (citing DN 50-5 (Byram Affidavit); DN 50-6 (Amerisure policy excerpts).) Shortly thereafter, Chapman states, Amerisure, acting through adjuster Trevor Byram ("Byram"), whose affidavit is appended to Chapman's response, decided to obtain a recorded statement from Chapman and to retain Specialty Claims to investigate the accident. Amerisure later provided the recorded statement and report to Chapman's counsel.

In his initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, Chapman stated that he possessed what he calls "Arbitration Documents." (DN 50 at 4; *see* DN 15 at 3.) Chapman avers that he produced *some* of the arbitration documents, over objection, in his responses to Young's discovery requests. In response to a second set of discovery requests served by Young, Chapman refused to produce copies of his recorded statement and the Specialty Claims report on the basis of attorney-client privilege and work-product protection. Counsel for Young and Chapman exchanged email correspondence in relation to the discovery dispute but were unable to resolve it informally. Young then filed the motion to compel.

Chapman argues that the recorded statement is protected by the attorney-client privilege because the applicable Amerisure insurance policy (1) requires Amerisure to defend any insured against suit; and (2) requires Chapman to cooperate in the investigation or settlement of the suit. (DN 50 at 6 (citing DN 50-5, Byrum affidavit).) Chapman further argues that neither his production of the statement in the course of the arbitration proceedings nor the creation by a third-party of a summary of the statement waived the attorney-client privilege. Additionally, Chapman contends that the recorded statement is protected by the work-product doctrine because it was created in anticipation of litigation as that concept is defined by the Sixth Circuit. (DN 50 at 8-9 (citing *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (stating that to determine whether a document was created in anticipation of litigation, the court looks to (1) whether it was prepared because of a subjective anticipation of litigation; and (2) whether that subjective anticipation was objectively reasonable)).) Chapman argues that the Specialty Claims report is protected work-product because it, too, satisfies the "anticipation of litigation" standard.

### 3. Young's Reply

In his reply (DN 57), Young argues that Amerisure was Chapman's representative or agent and, accordingly, Amerisure could and did waive the attorney-client privilege for all purposes when it voluntarily disclosed Chapman's statement to the arbitrator *and to Safeco* during the arbitration proceedings. Additionally, Young disputes Chapman's argument that Chapman's production in this matter of a summary of his recorded statement was inadvertent. Young argues that Chapman produced the summary in response to a document request propounded by Young and failed to take any action to rectify the error, if any, of producing it. Similarly, Young argues that Chapman waived any work-product protection through his disclosures to Safeco during the arbitration proceedings and to Young during discovery.

### 4. *In Camera* Review

On March 3, 2016, the undersigned Magistrate Judge conducted a telephonic status conference with counsel to discuss the motion to compel and another discovery dispute. The Court ordered counsel for Chapman to provide for *in camera* review a copy of Chapman's recorded statement and the Specialty Claims report. (*See* DN 71.)

### DISCUSSION

### 1. Standard of Review

#### a. Applicable Law

Young's motion to compel raises issues related to both the attorney-client privilege and the work-product doctrine. "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client [privilege] claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citing *Baker v. GMC (In re GMC)*, 209 F.3d

1051, 1053 (8th Cir. 2000)) (additional citations omitted). Pursuant to Rule 501 of the Federal Rules of Evidence, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Kentucky has codified the attorney-client privilege (or "lawyer-client privilege," as it is called under Kentucky law) in Rule 503 of the Kentucky Rules of Evidence. Accordingly, the Court will apply Kentucky law with respect to Chapman's assertion of attorney-client privilege. Conversely, "[t]he work-product doctrine is a procedural rule of federal law; thus, Federal Rule of Civil Procedure 26 governs in this diversity case." *In re Professionals Direct*, 578 F.3d at 438 (citing *In re Powerhouse Licensing*, 441 F.3d at 472).

        b. <u>Attorney-Client Privilege</u>

Pursuant to Rule 503 of the Kentucky Rules of Evidence, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client," KRE 503(b), and the communication must be "made between two of the four parties listed in the rule: the client, the client's representatives, the lawyer, or the lawyer's representatives." *Haney v. Yates*, 40 S.W.3d 352, 354 (Ky. 2000). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." KRE 503(a)(5); *see Lexington Pub. Library v. Clark*, 90 S.W.3d 53 (Ky. 2002) ("Whether a particular communication is privileged depends (absent waiver) not on what use was ultimately made of the communication, but on the facts and circumstances under which the communication was made.").

The Kentucky Supreme Court expanded the scope of the attorney-client privilege in *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979), a case that both Chapman and Young claim as support for their positions. In *Asbury*, the Supreme Court "extended the scope of the attorney-client privilege . . . to include communications between an insured and a representative of his insurer." *Haney*, 40 S.W.3d at 354 (citing *Asbury*, 589 S.W.2d at 216). The court limited this rule, however, to situations in which "the insurance policy requires cooperation with respect to potential litigation as a condition of coverage." *Id.* In *Haney*, the Kentucky Supreme Court not only expounded on its holding in *Asbury*, but it also identified certain governing principles regarding assertions of privilege. First, the Court stated, "parties are entitled to discover any matter not privileged." *Id.* at 355 (citing Ky. CR 26.02); *see* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."). Second, "the party asserting a privilege must prove its applicability." *Haney*, 40 S.W.3d at 355 (citations omitted). "Finally, 'privileges should be strictly construed, because they contravene the fundamental principle that "the . . . public has a right to every man's evidence."'" *Id.* (quoting *Sisters of Charity Health Sys. v. Raikes*, 984 S.W.2d 464, 469 (Ky. 1998) (quoting *Trammel v. United States*, 445 U.S. 40, 45 (1980))).

    c. Work-Product Doctrine

The work-product doctrine "is distinct from and broader than the attorney-client privilege." *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp. (In re Columbia/Hca Healthcare Corp. Billing Pracs. Litig.)*, 293 F.3d 289, 294 (6th Cir. 2002) (citations omitted). The doctrine "protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Professionals Direct*, 578

F.3d at 438 (citing *Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947)). "So-called 'fact' work-product, the 'written or oral information transmitted to the attorney and recorded as conveyed by the client,' *In re Antitrust Grand Jury*, 805 F.2d [155, ]163 [6th Cir. 1986], may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship." *In re Columbia/Hca Healthcare*, 293 F.3d at 294 (citing *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988)). "However, absent waiver, a party may not obtain the 'opinion' work of his adversary; i.e., 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d at 163-64).

As the work-product doctrine is a procedural rule of federal law, it is governed by Rule 26 of the Federal Rules of Civil Procedure. *Id.* (citing *In re Powerhouse Licensing*, 441 F.3d at 472). Pursuant to Rule 26(b)(3), "[o]rdinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation or for trial* by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

"To determine whether a document has been prepared 'in anticipation of litigation,' and is thus protected work product, we ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct*, 578 F.3d at 439 (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). If a document both serves an ordinary business purpose *and* was prepared in anticipation of litigation, it is not necessarily unprotected. However, "the burden is on the party

8

claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id.* (quoting *Roxworthy*, 457 F.3d at 595) (internal quotation omitted).

**2. Application to this Case**

a. Chapman's Recorded Statement

As is stated above, the Court conducted an *in camera* review of the statement that Chapman gave to Amerisure. The statement is a 9-page transcript of a conversation between Chapman and an employee of Amerisure. It was recorded on February 15, 2013, one day after the accident. It consists of Chapman's description of the accident, including his recollections of the Young's actions.

i. *Attorney-Client Privilege*

An insurer is not one of the "four parties listed in [KRE 503(b)]: the client, the client's representatives, the lawyer, or the lawyer's representatives." *Haney*, 40 S.W.3d at 354. Nonetheless, as long ago as 1979, in *Asbury*, the Kentucky Supreme Court recognized the role of insurers in the attorney-client privilege scheme, affirming a decision of the Kentucky Court of Appeals holding that, on the basis of attorney-client privilege, a plaintiff in an automobile accident dispute was not entitled to discover a recorded statement that the defendant gave to her insurer. *See generally Asbury*, 589 S.W.2d 216. "In holding the statement privileged, th[e] [c]ourt relied upon a provision in the defendant's insurance policy – a contract between the insured and the insurer – which required the defendant to cooperate with the insurance company and obligated the insurer to provide counsel." *Haney*, 40 S.W.3d at 354. The court reasoned as follows:

9

> "The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *People v. Ryan*, 197 N.E.2d 15, 17 ([Ill.] 1964). We think this conclusion makes good sense. When a person has had an automobile accident that may result in litigation he would normally confide in counsel. If, however, he is insured, he has paid an insurance company to exercise that choice for him. He should not be penalized for his prudence in that respect.

*Asbury*, 589 S.W.2d at 217.

Young argues that Chapman has not shown that he is required to comply with his employer's insurer's investigation. The Court disagrees. As an attachment to his response, Chapman provided an affidavit of an Amerisure adjuster and excerpts of the applicable insurance policy which adequately demonstrate that Chapman was compelled to participate in the insurer's investigation of the accident, in this instance by giving a recorded interview. (*See* DN 50-5; DN 50-6 at Section II.A.1.b. (defining "insured" as "[a]nyone else while using with [the policyholder's] permission a covered 'auto' you own, hire or borrow"); *id.* at Section IV.A.2.b.(3) (listing insured's obligations, including to "[c]ooperate with [Amerisure] in the investigation or settlement of the claim or defense against the 'suit").)

Accordingly, the Court finds that the recorded statement given by Chapman to Amerisure is within the scope of attorney-client privilege, as defined under Kentucky law.

### ii. *Waiver of Attorney-Client Privilege*

Young argues that even if Chapman's recorded statement is protected by the attorney-client privilege, as the Court has found herein, Chapman waived the privilege when Amerisure produced a copy of the report to the arbitrator in the course of its arbitration with Safeco. He

10

further argues that Chapman waived the privilege by producing to Young in the course of discovery a summary of the arbitration documents that disclosed the existence and some contents of the recorded statement and investigative report.

Rule 509 of the Kentucky Rules of Evidence sets forth the standard for waiver of privilege. In pertinent part, it provides as follows:

> A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privilege matter. This rule does not apply if the disclosure itself is privileged.

KRE 509. A waiver of the privilege may be either explicit or implied. *3M Co. v. Engle*, 328 S.W.3d 184, 188 (Ky. 2010). A client "may waive the attorney-client privilege by taking positions that place the substance of the communications in issue." *Id.* (quoting Robert G. Lawson, The Kentucky Evidence Law Handbook, § 5.05[10], at 363-64 (4th ed. 2003 "& 2010 supp.) (citations omitted). Where issues of implied waiver arise, the inquiry for the trial court is whether allowing the privilege to protect against disclosure "would be manifestly unfair to the opposing party." *Id.* at 188-89 (internal quotations omitted).

Whereas Chapman avers that the arbitration proceedings were between Amerisure and Safeco and did not involve Chapman and Young as individuals, Young appears to blur the line between Amerisure and Chapman. Chapman contends that he was not a party to the arbitration proceedings, and therefore, any disclosure of the recorded statement was made by Amerisure and cannot be imputed to him. Framed in the language of Rule 503 of the Kentucky Rules of Evidence, Chapman's position is that he did not waive his "privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication . . . ." KRE 503(b). At

this juncture, the Court does not have sufficient information before it regarding the parties and issues involved in the arbitration proceedings to allow it to conclude whether Amerisure could – and if so, that it did – waive the attorney-client privilege attached to the recorded statement.

Nonetheless, the Court *does* have sufficient information to conclude that Chapman waived the privilege in the course of discovery in this action. Chapman concedes that he acknowledged possession of the arbitration documents in his Rule 26 initial disclosures. He then produced some of the arbitration documents in response to Young's discovery requests. Chapman concedes that among the documents produced was a "summary" of the recorded statement. The attorney-client privilege is waived where a client "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." *Stinnett v. Commonwealth*, 364 S.W.3d 70, 86 (Ky. 2011) (quoting *3M Co.*, 328 S.W.3d at 188-89). Further, the privilege may be impliedly waived where a client takes a position that places the substance of the communication in issue. *Id.*

In this case, Chapman voluntarily disclosed the contents of the so-called arbitration documents when, in response to discovery requests, he produced some of the documents, including a *summary of the privileged matter, the recorded statement*. Any argument by Chapman that this disclosure was inadvertent is unavailing, as Chapman did not notify Young of any purportedly erroneous disclosure or take steps to rectify an error. The Court finds that Chapman impliedly waived the attorney-client privilege attached to the recorded statement and that it would be manifestly unfair to Young were the Court not to require Chapman to produce the statement.

### iii. *Work-Product Doctrine*

As is set forth above, the crux of the parties' dispute regarding the applicability of the work-product doctrine is whether the recorded statement was prepared "in anticipation of litigation." The Sixth Circuit has adopted a two-part test that asks "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Roxworthy*, 457 F.3d at 594 (citations omitted). "Because documents are not protected if they were created for nonlitigation purposes, regardless of content, '[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.'" *Id.* at 595 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)); *see id.* ("Thus, we must examine not only the documents themselves, but the circumstances surrounding the documents' creation.").

"The bare assertion of work product protection or privilege does not shield documents from discovery." *Burkhead & Scott, Inc. v. City of Hopkinsville*, 2014 U.S. Dist. LEXIS 166374, *20-21 (W.D. Ky. Dec. 1, 2014). "[A] party may satisfy its burden of showing anticipation of litigation 'in any of the traditional ways in which proof is produced in pretrial proceedings *such as affidavits made on personal knowledge*, depositions, or answers to interrogatories,' and that the showing 'can be opposed or controverted in the same manner.'" *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison Co. v. G.A. Techs., Inc.*, 847 F.2d 335, 341 (6th Cir. 1988)) (emphasis added). "However, application of the privilege will be rejected where the 'only basis' for the claim is an affidavit containing 'conclusory statement[s].'" *Id.* at 597 (quoting *Guardsmark, Inc.*

*v. Blue Cross & Blue Shield of Tenn.*, 206 F.R.D. 202, 209 (W.D. Tenn. 2002)) (additional citations omitted).

By failing to support his position with sufficient specificity, Chapman asks the Court to accept the proposition that *all* investigations into insurance claims are conducted "in anticipation of litigation." The Sixth Circuit has considered the question of "anticipation of litigation" in the context of insurance claims and has taken pains to dispel the argument that Chapman puts forward in this case. The Sixth Circuit has observed that "[t]he fact that [the defendant insurer] reasonably anticipate[s] litigation . . . does not answer whether it prepared *the disputed documents* 'because of' litigation or not." *In re Professionals Direct*, 432 F.3d at 439. "Making coverage decisions is part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist [the insurer] in deciding coverage, then they are not protected by the work-product doctrine." *Id.* (citing *Roxworthy*, 457 F.3d at 595); *see also Cardinal Aluminum Co. v. Cont'l Cas. Co.*, 2015 U.S. Dist. LEXIS 95361, *10 (W.D. Ky. July 22, 2015) ("Documents prepared as part of the ordinary business functions of an insurance broker are not prepared as a result of anticipated litigation.") (citations omitted); *Darby v. Gordon Food Serv.*, 2013 U.S. Dist. LEXIS 136196 (W.D. Ky. Sept. 24, 2013) ("[T]he theoretical anticipation of litigation does not transform every subsequent document into work product."); *Flagstar Bank v. Fed. Ins. Co.*, 2006 U.S. Dist. LEXIS 58559, *13 (E.D. Mich. Aug. 21, 2006) ("A factual investigation of an insurance claim by an insurance company is within the ordinary course of an insurance company's business [. . . ] 'Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insured, the claims files containing such documents usually cannot be entitled to work product

protection.'") (quoting *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 201 (M.D.N.C. 1988)).

The Court has carefully reviewed the recorded statement and the affidavit of Amerisure's adjuster, Trevor Byram. The Court recognizes the existence of factors that weigh in favor of finding that the statement was prepared in anticipation of litigation. For example, there were four cars and a number of individuals involved in the motor vehicle accident, and it received at least some media attention on the day that it occurred. Additionally, Byram's sworn testimony is that on the day after the accident, Amerisure had a belief that the accident may result in litigation. (DN 50-5 at ¶ 6.)

Nonetheless, the Court finds that the evidence is insufficient to support a conclusion that the report was prepared in anticipation of litigation. Byram's affidavit is conclusory; it fails to provide the sort of "specific and detailed" information that would demonstrate that the documents were prepared in anticipation of litigation. *Roxworthy*, 457 F.3d 597. Byram simply states that, "[b]ased on the facts of the accident, apparently involving multiple collisions between several vehicles, Amerisure retained Specialty Claims . . . and obtained the recorded statement . . . due to its belief that the accident may result in litigation." (DN 50-5 at ¶ 6.) Reviewing claims is the very nature of insurance companies' business. Neither Byram's affidavit nor the additional information set forth by Chapman in his response is sufficient to differentiate Amerisure's treatment of this investigation from any other potential or existing claim. Moreover, the police report in Amerisure's possession corroborated Chapman's account of the accident by stating that Young was at fault, which makes it less likely that Amerisure anticipated that Young would initiate litigation. Framing this issue in light of the Sixth Circuit's two-part *Roxworthy* test,

15

Chapman has not shown that Amerisure had a subjective anticipation of litigation; therefore, the Court cannot conclude that there was an objectively reasonable anticipation of litigation.

There is no question that Chapman's statement is relevant. Chapman, then, bore the burden of showing that the recorded statement was prepared in anticipation of litigation. Because Chapman has not met that burden, the Court need not consider whether Young has a substantial need for the recorded statement and would experience undue hardship were he required to look elsewhere for the contents of the statement. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 382 (6th Cir. 2009) (setting forth burden-shifting framework and requiring defendant to produce contested materials).

Based on the foregoing, the Court finds that Chapman's statement is not protected by the work-product doctrine. Accordingly, Chapman is required to produce a copy of the statement to Young.

b. Specialty Claims Report

The investigative report produced by Specialty Claims and provided to Amerisure is 30 pages long, including a three-page report, approximately 25 photographs of the scene of the accident and the surrounding area, with text descriptions, and a copy of a police report regarding the incident. The final page appears to be a hand-drawn map of the area, though it is unreadable due to photocopying or scanning.

The reasoning set forth above in finding that Chapman's recorded statement is not protected by the work-product doctrine applies equally to the Specialty Claims report. Chapman has not met his burden of showing that the report was prepared in anticipation of litigation. The Specialty Claims report was prepared approximately one week after the accident. The Court is

not aware of any factors known by Amerisure at that time that would have established a subjective anticipation of litigation, as opposed to an investigation in the usual course of an insurer's business. "[T]here is no hard and fast rule as to when the insurance company's activity shifts from the ordinary course of business to anticipation of litigation." *Volkswagen AG v. Dorling Kindersley Publ'g, Inc.*, 2007 U.S. Dist. LEXIS 4225, *10 (E.D. Mich. Jan. 22, 2007) (citing *Fine v. Bellafonte Underwriters Ins. Co.*, 91 F.R.D. 420, 422 (S.D.N.Y. 1981)). However, the party seeking work-product protection must show that "the possibility of litigation had changed from a theoretical possibility to a real possibility." *Id.* at *11. Chapman has not done so here. Specifically, he has not shown that the Specialty Claims report was sought and prepared as a result of "an objectively reasonably subjective belief that litigation was a real possibility." *Id.*

Based on the foregoing, the Court concludes that the Specialty Claims report is not covered by the work-product doctrine. Chapman does not claim that the report is covered by the attorney-client privilege or any other principle that would protect it from disclosure. Accordingly, the Court concludes that Chapman must turn over the Specialty Claims report.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Young's motion to compel is **GRANTED**. **No later than May 20, 2016**, Chapman shall produce to Young's counsel copies of the recorded statement and the Specialty Claims report.

cc: Counsel of record